UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Patricia Zavala, | Case No.: 2:22-cv-01204-JAD-VCF |
| Plaintiff | |
| v. | **Order Granting in Part Motion to Dismiss** |
| Geico Casualty Company, | [ECF No. 20] |
| Defendant | |

Plaintiff Patricia Zavala sues her insurer Geico Casualty Company, claiming that it failed to fully cover the injuries that she sustained while riding as a passenger on her former boyfriend Sergio Picciuto's motorcycle. Picciuto's motorcycle insurance had lapsed, so Zavala sought uninsured-motorist coverage under her separate policy with Geico. But because that policy also named Picciuto as an insured and did not cover the motorcycle, Geico denied coverage beyond the state's statutory minimum, citing an exclusion for accidents involving uninsured vehicles owned by an insured.

Zavala brings claims for breach of contract, bad faith, and violation of Nevada's unfair-claims-settling-practices statute and requests punitive damages, alleging that Geico unfairly denied coverage because the exclusion is ambiguous, acted dilatory in resolving the claim, and offered shifting explanations for its decision. Geico moves to dismiss all her claims and strike the punitive-damages prayer, arguing that the policy unambiguously precludes coverage, that a mere coverage dispute can't support a bad-faith claim, and that her statutory claim and punitive-damages request are supported by conclusory allegations. Because the only reasonable interpretation of the policy precludes coverage, I dismiss Zavala's breach-of-contract claim. But Zavala's allegations state more than a coverage dispute, so I deny Geico's motion on the bad-

faith and statutory claims. And I grant Zavala leave to amend her request for punitive damages by March 9, 2023.

**Background**[1]

Nearly three years ago, Picciuto took his then-girlfriend Zavala for an ill-fated ride on his motorcycle.[2] The two got into a serious accident, and Zavala was injured.[3] Faced with tens of thousands of dollars in medical bills,[4] Zavala turned to Geico for coverage under Picciuto's motorcycle policy, a claim that Geico denied in May 2020 because Picciuto's policy had lapsed.[5] But Zavala had a separate automobile policy with Geico for her own car that provided uninsured-motorist coverage.[6] That policy lists both Zavala and Picciuto as "named insureds" in the declarations page and does not cover the motorcycle.[7] It also contains an exclusion for accidents involving the insureds' vehicles that are not insured by the policy:[8]

> 2. There is no coverage for **bodily injury** sustained by an **insured** while operating, **occupying** or through being struck by a motor vehicle owned by or available for the regular use of **you** or any **relative** and which is not insured under the liability coverage of this policy.

The policy defines "insured" and "you" to include "the individual" or "the policyholder in the declarations."[9]

---

[1] These facts are taken from Zavala's first amended complaint, ECF No. 18, and the insurance policy, ECF No. 20-2, which is incorporated by reference in the complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (observing that courts may accept as true facts in incorporated documents).
[2] ECF No. 18 at ¶ 8.
[3] *Id.*
[4] *Id.* at ¶ 30.
[5] *Id.* at ¶¶ 10, 13.
[6] *Id.* at ¶ 7.
[7] ECF No. 20-2 at 2.
[8] *Id.* at 17.
[9] *Id.* at 8, 17.

2

In July 2020, Geico informed Zavala that its "investigation and evaluation of the loss was ongoing"[10] and sent similar updates every few months for the next year.[11] Almost a year later, Zavala's counsel told Geico "that if . . . Picciuto's motorcycle policy was not in force on the day of the collision, the motorcycle was uninsured and [p]laintiff was entitled to uninsured[-]motorist benefits under her [separate] auto policy."[12] As Geico continued to investigate, Zavala made a formal demand for uninsured-motorist coverage in November 2021.[13] Two months later, Geico "disclaimed coverage down to the state minimum" of $25,000, explaining that "Zavala is listed under this policy, but the vehicle involved was also owned by insured . . . Picciuto[,]" so further coverage was precluded under the exclusion for accidents involving insureds' uninsured vehicles.[14]

## Discussion

**I.    Zavala fails to state a breach-of-contract claim because the policy unambiguously precludes coverage.**

In Nevada, "[t]he purpose of contract interpretation is to determine the parties' intent when they entered into the contract."[15] Courts "interpret insurance polic[ies] from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary[,] and popular sense" and "to give reasonable and harmonious meaning to the entire policy."[16] A policy, even a "seemingly clear" one, is "ambiguous if it creates multiple

---

[10] ECF No. 18 at ¶ 15.
[11] *Id.* at ¶¶ 16, 17, 19, 20.
[12] *Id.* at ¶ 18.
[13] *Id.* at ¶ 29.
[14] *Id.* at ¶¶ 34, 36.
[15] *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014).
[16] *Id.* (quoting *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993)).

reasonable interpretations[,]" and ambiguities are read "against the . . . insurer" so that "the insured's reasonable expectations" are effectuated.[17] But courts interpret unambiguous policies "according to the plain meaning of [their] terms."[18] When it comes to policy exclusions, they are "interpreted narrowly[,]" and insurers must: (i) draft them "in obvious and unambiguous language"; (ii) "demonstrate that the interpretation excluding coverage is the only reasonable interpretation"; and (iii) "establish that the exclusion plainly applies to the particular case."[19]

Under these principles, Geico has demonstrated that the policy plainly and unambiguously excludes coverage here. The exclusion bars uninsured-motorist coverage for "bodily injury sustained by an insured . . . occupying . . . a motor vehicle owned by . . . you . . . and which is not insured under the liability coverage of this policy."[20] The policy defines "[i]nsured" to include "[t]he individual named in the declarations"[21] and "[y]ou" to include "the policyholder named in the declarations."[22] Zavala does not contest most of the essential facts: she seeks bodily injury coverage; she was injured in a motor vehicle; that vehicle was owned by Picciuto; that vehicle was not insured under the policy; and she and Picciuto are listed as "named insured[s]" in the declarations page.[23] So, as Geico argues,[24] a straight-forward reading of the policy excludes coverage for what occurred here—bodily injury sustained by an insured (Zavala)

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] ECF No. 20-2 at 17 (emphases removed).
[21] *Id.* at 16.
[22] *Id.* at 8.
[23] ECF No. 18 at ¶¶ 8, 9, 18; ECF No. 20-2 at 2.
[24] ECF No. 20 at 7.

occupying a motor vehicle owned by the policyholder (Picciuto) that is not insured under the policy.

Zavala contends that the exclusion is ambiguous because, even though Geico now asserts that the terms "you" and "insured" include both Picciuto and herself, it "intended for those terms to identify singular persons."[25] She points to the fact that the relevant portions of the definitions of those terms— "*the* individual" and "*the* policyholder"—are singular.[26] She also emphasizes that Geico argued in another case that similar language "must refer to a single person."[27] So, according to Zavala, Geico "is purposefully picking and choosing how to define terms in its contracts based on its own interest under the circumstances" and "should admit that the terms . . . are in fact ambiguous."[28]

But there is no ambiguity here. The declarations page clearly indicates that both Picciuto and Zavala are named insureds,[29] so it is not reasonable to read "the individual" or "the policyholder" to refer to a single person in this instance. Assume, as Zavala would have it, that "you" and "insured" refer to just one person on the declarations page—either Picciuto or Zavala (but not both). That would mean that only one of them is included in all the coverage provisions that cover "you" or an "insured"[30]—leaving the other without any coverage. Interpreting the policy that way does not comport with the clear intent of the policy to cover both Picciuto and

---

[25] ECF No. 21 at 6.

[26] *Id.* (emphases added).

[27] *Id.* (citing *Shaw v. GEICO Gen. Ins. Co.*, 2019 WL 2610958, at *3 (C.D. Cal. June 4, 2019), *rev'd and remanded*, 813 F. App'x 343 (9th Cir. 2020) (unpublished)).

[28] *Id.*

[29] ECF No. 20-2 at 2.

[30] *See, e.g.*, ECF No 20-2 at 11 (noting that auto medical payments applies to "[y]ou and each relative who sustains bodily injury") (emphases removed).

Zavala.[31]  And, because insurance policies are read to give a "harmonious meaning to the entire policy[,]"[32] "you" and "insured" must refer to both of them for coverages and exclusions.

That Geico made the ultimately unsuccessful argument (in another case in another jurisdiction under different circumstances) that "the individual . . . must refer to a single person" does not make it so here.[33]  In that case, the declarations page listed one person as a named insured and another person as an additional driver.[34]  The additional driver sought coverage, which Geico denied because the additional driver was not listed as a "named insured" in the declarations.[35]  Though the district court granted summary judgment for Geico, a Ninth Circuit panel—albeit in an unpublished opinion—reversed, reasoning that the policy defined "insured as the individual named in the declarations" so the additional driver "could reasonably be considered an insured" because "she is named in the declarations."[36]  That the Ninth Circuit found that multiple people (the named insured and the additional driver) could qualify as "the individual . . . named in the declarations[,]"[37] if anything, supports Geico's interpretation that multiple people (both Zavala and Picciuto) are insureds in a policy that lists both as named insureds.  And that Geico argued that "the individual" was singular when the policy named a single insured does not bind the insurer to that position if the policy names multiple insureds.

---

[31] For this reason too, including just one of them would conflict with their reasonable expectations of coverage.  So, even if the terms were ambiguous, I find that the policy must be read to include both Zavala and Picciuto in the definitions of "you" and "insured."

[32] *Century Sur.*, 329 P.3d at 616 (quoting *Siggelkow*, 846 P.2d 303).

[33] ECF No. 21 at 6 (quoting *Shaw*, 2019 WL 2610958, at *3).

[34] *Shaw*, 2019 WL 2610958, at *1.

[35] *Id.*

[36] *Shaw*, 813 F. App'x at 343–344 (unpublished).

[37] *Id.* at 343.

So, because the only reasonable understanding of the policy precludes coverage for Zavala, I dismiss her breach-of-contract claim.[38]

## II.  Zavala's allegations state bad-faith and statutory claims.

Geico argues that "to succeed on a bad[-]faith claim, a plaintiff must first show [that] there is coverage" or that the insurer "had [no] reasonable basis for its decision on [the] claim."[39] But, even though Geico attempts to frame its coverage decision as a denial, it acknowledges that it "offered the state minimum of $25,000 in coverage"[40]—so this is not a case of no coverage. Regardless, the very Supreme Court of Nevada case that Geico relies on—*Allstate Insurance Co. v. Miller*—recognizes that "delay in paying a claim" can constitute bad faith and that "a bad-faith action applies to more than just an insurer's denial or delay."[41] Zavala alleges that Geico "did not provide an official position on coverage until approximately a year and [a] half after" it sent the first update letter and seven months after it "was aware of [her] intention to file an uninsured[-]motorist claim.[42] Zavala also details multiple explanations from Geico about its decision that are not entirely consistent.[43] At this early stage of this action, these allegations

---

[38] Zavala requests leave to amend because her complaint was "originally filed . . . in state court and . . . drafted to meet . . . the requirements of that court." ECF No. 21 at 9. Because the policy is unambiguous, I find that no amendment could save the breach-of-contract claim.

[39] ECF No. 20 at 15–17.

[40] *Id.* at 3.

[41] *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 325 (Nev. 2009). Geico's reliance on *Sharp Plumbing, Inc. v. National Fire & Marine*—an unpublished Ninth Circuit panel decision—also misses the mark. *See* ECF No. 20 at 16 (citing 633 F. App'x 441, 442 (9th Cir. 2016)). That case dealt with "bad[-]faith refusal to settle[,]" whereas Zavala also faults Geico's claims-handling practices.

[42] ECF No. 21 at 8; ECF No. 18 at ¶¶ 15, 80.

[43] *Id.* at ¶ 76.

7

suffice to state a bad-faith claim, especially in light of what should have been a relatively straightforward factual investigation and decision under the policy.

For the same reason, Zavala's allegations state a violation of Nevada's unfair-claims-settling-practices statute.[44]  That statute requires insurers to "act reasonably promptly upon communications with respect to claims"; "adopt and implement reasonable standards for the prompt investigation and processing of claims"; and "affirm or deny coverage of claims within a reasonable time."[45]  Geico argues that Zavala only "alleges . . . legal conclusions" without "factual allegations of the conduct in violation of the statute."[46]  But Zavala specifically alleges that Geico sent an update on July 7, 2020, knew about Zavala's theory on June 3, 2021, and only reached an official position in January 2022.[47]  So I deny Geico's motion on Zavala's bad-faith and statutory claims.

### III. Zavala's punitive-damages allegations are stricken with leave to amend.

Geico also moves to strike Zavala's request for punitive damages, arguing that Zavala's allegations "are conclusory and mere recitations of the elements to obtain an award of punitive damages."[48]  Zavala counters that her "[c]omplaint, as a whole, provides that [Geico] has engaged in behavior justifying an award of punitive damages" and that Nevada Revised Statute 42.005(2)(b) "specifically identifies bad faith as a source of punitive damages."[49]  Though that statute states that certain caps on punitive damages do not apply to bad-faith insurance-practices

---

[44] Nev. Rev. Stat. § 686A.310.
[45] *Id.* at § 686A.310(b)–(d).
[46] ECF No. 20 at 17.
[47] ECF No. 18 at ¶¶ 15, 80.
[48] ECF No. 20 at 19–20.
[49] ECF No. 21 at 10.

claims, it also requires "evidence that the defendant has been guilty of oppression, fraud[,] or malice."[50] While Zavala's allegations of delay may amount to bad faith, they are nowhere close to satisfying the standard for punitive damages.[51] So I grant Geico's request to strike the allegations referencing punitive damages, but I do so with leave for Zavala to amend her complaint by March 9, 2023 if she can plead true facts from which the court can infer fraud, malice, or oppression.

## Conclusion

IT IS THEREFORE ORDERED that Geico's motion to dismiss **[ECF No. 20] is GRANTED** in part and **DENIED** in part.  Zavala's contract-breach claim is dismissed with prejudice, and her request for punitive damages is stricken with leave to amend by March 9, 2023.  If Zavala fails to amend by that date, this case will go forward on her bad-faith and statutory claims only.

_____
U.S. District Judge Jennifer A. Dorsey
February 27, 2023

---

[50] Nev. Rev. Stat. 42.005(1), (2)(b).

[51] *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 198 (Nev. 1989) ("Nevada follows the rule that proof of bad faith, by itself, does not establish liability for punitive damages."); *see, e.g.*, *id.* (defining oppression as "a conscious disregard for the rights of others [that] constitutes an act of subjecting plaintiffs to cruel and unjust hardship" and holding that punitive damages were justified in a case in which an insurer "fail[ed] to divulge its financial difficulties" and thus "prevented [the insured] from making an informed decision whether to change carriers" before "he was no longer insurable" and decided to "delay[] several times in going to the hospital").

9